## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NITA JAIN,
*individually and on behalf of all others*
*similarly situated*,

            Plaintiffs,

v.

NURTURE, INC.,
*d/b/a Happy Family Brands*,

            Defendant.

CASE NO.: 1:21-cv-01473

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Nita Jain ("Plaintiff"), on behalf of herself and all others similarly situated, by her undersigned attorneys, against Defendant Nurture, Inc. (hereafter "Nurture" or "Defendant"), alleges the following based upon personal knowledge as to herself and her own action, and, as to all other matters, alleges, upon information and belief and investigation of their counsel, as follows:

### INTRODUCTION

1.    This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased one or more of certain baby foods manufactured by Nurture.[1]

---

[1] The products at issue are all baby and toddler foods/snacks sold by Defendant that all state prominently that the Products are produced by a team of "real [parents or moms], pediatricians & nutritionists **on a mission to bring health and happiness to our little ones and the planet**," and further that the **"[the Nurture] team creates nutritious meals and snacks** . . . ." Products with these representations include but are not limited to: HappyBaby Organic Greek Yogis Blueberry and Purple Carrot, HappyBaby Organic Superfood Puffs Kale & Spinach, HappyBaby Organic Superfood Puffs Strawberry & Beet, HappyBaby Organic Superfood Puffs Apple & Broccoli, HappyBaby Organic Superfood Puffs Banana & Pumpkin, and HappyBaby Organic Superfood Puffs Sweet Potato & Carrot, HappyBaby Organic Rice Cakes Apple, HappyBaby Organic Rice Cakes Blueberry & Beet, HappyBaby Organic Teethers Pea & Spinach, HappyBaby Organic Teethers Sweet Potato & Banana, Happy Baby Oatmeal Baby Cereal, and HappyBaby Oats & Quinoa Cereal (the "Products"). Discovery may reveal additional products at issue.

2.      Nurture manufactures, markets, advertises, labels, distributes, and sells baby food products under Happy Family Brands throughout the United States, including in this District.

3.      Nurture states "Happy Family products are created in collaboration by our research and development (R&D) team, and with partners like registered dietitians, nutritionists, lactation consultants, and medical professionals."[2]

4.      Nurture further states "[b]ecause we're parents too, we live the reality and understand the needs of today's families. We are also driven by the long-term health and safety of children."[3]

5.      Nurture touts on its website its commitment to exceeding USDA organic standards, stating "[w]hat your little on eats in the first few years of life is crucial – it's important their diet provides the nutrients and vitamins needed for proper development."[4]

6.      Nurture, however, in no way list heavy metals as an ingredient on the Products' labels nor does it warn of the potential presence of heavy metals in its Products.

7.      Unbeknown to Plaintiff and members of the Classes, and contrary to the representations on the Products label, the Products contain heavy metals in high concentrations, including inorganic arsenic, cadmium, mercury, and lead, which, if disclosed to Plaintiff and members of the Classes prior to purchase, would have caused Plaintiff and members of the Classes not to purchase or consume the Products.

8.      As a result, the Products' labeling is deceptive and misleading.

---

[2] *See* https://www.happyfamilyorganics.com/faqs/ (last visited Feb. 15, 2021).
[3] *Id.*
[4] *See* https://www.happyfamilyorganics.com/our-mission/going-beyond-organic-standards/ (last visited Feb. 15, 2021).

## THE PARTIES

9.      Plaintiff Nita Jain is a citizen of the State of Georgia and is a member of the Class defined herein. Plaintiff purchased the Products from Amazon, iHerb, and Target between December 5 and December 15, 2020. Prior to purchasing the Products, Plaintiff saw Defendant's health and nutritional claims on the packaging, including, but not limited to, "on a mission to bring happiness and health to our little ones and the planet" and "[the Nurture] team creates nutritious meals and snacks[,]" which she relied on in deciding to purchase the Products.

10.     During that time, based on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements and other marketing by Defendant, Plaintiff was unaware that the Products contained any level of heavy metals, including inorganic arsenic, would not have purchased the food if the heavy metal concentrations were fully disclosed, or she would not have paid as much for the Products if that information were fully disclosed. Plaintiff was injured by paying a premium for the Products that have no or de minimis value—or whose value was at least less than what she paid for the Products—based on the presence of the high concentrations of heavy metals.

11.     Defendant Nurture, Inc., is an American food company incorporated in Delaware with its headquarters located in New York, New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because there are more than 100 Class members, the claims of the proposed Class members exceed $5,000,000, and because Defendant is a citizen of a different state than most Class members.

13.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in the district, regularly sells and markets products and conducts business in this District, and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

14.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered here, conducts substantial business in this District, a substantial portion of the events complained of took place in this District, and this Court has general jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

15.    The market for baby foods is exploding. The baby foods market worldwide is projected to grow by $22.7 billion by the year 2025.[5]

16.    Along with the exploding baby food market is a surge in popularity of baby food products that are organic and otherwise 'healthy' for babies.[6]

17.    Defendant manufactures, markets, advertises, labels, distributes, and sells Products, both in the past and currently. Defendant has advertised and continues to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

---

[5] *See* https://www.researchandmarkets.com/reports/338658/baby_foods_and_infant_formula_global_market?utm_source=dynamic&utm_medium=BW&utm_code=b559sk&utm_campaign=1386712+-+Global+Baby+Foods+and+Infant+Formula+Market+Assessment+2020-2025&utm_exec=joca220bwd (last visited Feb. 15, 2017).
[6] *Id.*

18.    On the Products, Nurture intends to assure consumers that the Products are nutritious and healthy, stating prominently that the Products are produced by a team of "real [parents or moms], pediatricians & nutritionists **on a mission to bring health and happiness to our little ones and the planet**," and further that the **"[the Nurture] team creates nutritious meals and snacks . . . ."**




19.    Defendant's packaging of the Products, however, does not disclose the presence heavy metals.

20.    Rather, Nurture directs reassuring representations, as previously discussed, on its Products' packaging to consumers, like Plaintiff and the members of the Classes, and Nurture intends that Plaintiff and members of the Classes read and rely on its representations.

21.    Nurture makes these representations because it knows that healthy baby food is a material factor in baby food purchasing decisions to consumers like Plaintiff and members of the Classes.

22.    However, contrary to the representations made on the label and packaging of the Products, the Products contain heavy metals in high concentrations in a manner that is not healthy or nutritious.

### U.S. House of Representatives Investigation

23.    An investigation by the U.S. House of Representatives Subcommittee on Economic and Consumer Policy (hereafter the "Subcommittee") revealed that baby foods manufactured by Nurture are tainted with significant levels of toxic heavy metals, including arsenic, lead, mercury, and cadmium.[7]

24.    Specifically, the Subcommittee found that:

        a.    Nurture sold baby foods after tests showed they contained as much as 180 parts per billion (ppb) inorganic arsenic. Over 25% of the products Nurture tested before sale contained over 100 ppb inorganic arsenic. Nurture's testing shows that the typical baby food product it sold contained 60 ppb inorganic arsenic.[8]

25.    The Food and Drug Administration (FDA), however, has set the maximum allowable levels in bottled water at 10 ppb inorganic arsenic.[9]

26.    The Subcommittee also found that:

---

[7] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021).
[8] Id.
[9] Id. at 4.

    a.      Nurture sold finished baby food products that tested as high as 641 ppb lead—over six times higher than its internal limit of 100 ppb lead. Almost 20% of the finished baby food products that Nurture tested contained over 10 ppb lead. Nurture also sold five other products after they tested over 50 ppb lead.

27.    The FDA has set the maximum allowable levels in bottled water at 5 ppb lead.[10]

28.    The Subcommittee also found that:

    a.      Sixty-five percent of Nurture finished baby food products contained more than 5 ppb cadmium; and

    b.      Nurture sold multi-grain cereal with 49 ppb cadmium. Nurture sold another 125 products that tested over 5 ppb, which is the EPA's limit for drinking water.

29.    Finally, the Subcommittee determined that Nurture sold finished baby food products containing as much as 10 ppb mercury whereas the Environmental Protection Agency (EPA) has capped the allowable level of mercury in drinking water at 2 ppb.

30.    Nurture sold its products for a profit, irrespective of potential health implications. In fact, Nurture sold all products tested, regardless of how much toxic heavy metal the baby food contained.[11]

31.    By company policy, Nurture's toxic heavy metal testing is not intended for consumer safety. The FDA has only finalized one standard—100 ppb inorganic arsenic in infant

---

[10] Subcommittee Report, *supra* note 7.
[11] *Id.*

rice cereal—and Nurture set its internal standard for that product 15% higher than the FDA limit, at 115 ppb.[12]

32.    Defendant's conduct regarding selling its products regardless of the testing results is especially deceptive and egregious because Defendant specifically touts its health benefits to consumers.

### *Plaintiff Relies Upon the Products' Label to Purchase the Products*

33.    Plaintiff was herself a victim of Defendant's mislabeling of the Products.

34.    Prior to each purchase, Plaintiff viewed the labels on Defendant's Products, including the representations that they are: "on a mission to bring happiness and health to our little ones and the planet" and "[the Nurture] team creates nutritious meals and snacks." Each time, Plaintiff reasonably relied upon the labels on Defendant's Products before purchasing them. In particular, Plaintiff purchased the Products believing they would provide her child with a healthy baby food, as claimed on the label and packaging of the Products.

35.    Defendant's labeling claims were a material factor in Plaintiff's decision to purchase Defendant's Products.

36.    At the point of sale, Plaintiff did not know, and had no reason to know, that Defendant's Products were mislabeled as set forth herein.

37.    Plaintiff later learned that the Products contain unhealthy and non-nutritious levels of heavy metals and inorganic arsenic.

38.    Accordingly, Plaintiff was deceived as a result of Defendant's false and misleading marketing practices.

---

[12] Subcommittee Report, *supra* note 7, at 4.

39.     Plaintiff would not have purchased or paid a price premium for the Products had she known they contained the levels of heavy metals and inorganic arsenic in the manner that they did.

40.     Plaintiff is in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiff and the Class members were in fact misled by Defendant's misrepresentations with respect to the Products. Plaintiff and Class members would have purchased other foods for their children if they had not been deceived by the misleading and deceptive labeling of the Products by Defendant.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seek certification of the following Class:

> All persons within the United States who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

42.     Plaintiff also seeks certification of the following Subclass (the "Georgia Subclass"):

> All persons in the State of Georgia who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

43.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to tens of thousands. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

46.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

a.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

b.     Whether Defendant's actions violate the state consumer fraud statutes invoked below;

c.     Whether Plaintiffs and members of the Classes were damaged by Defendant's conduct;

d.     Whether Defendant was unjustly enriched at the expense of Plaintiffs and Class members; and

e.     Whether Plaintiffs and Class members are entitled to injunctive relief.

47.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiff are typical of the claims of other members of the Classes. All members of the Classes

were comparably injured by Defendant's conduct described above, and there are no defenses available to Defendant that are unique to Plaintiffs or any particular Class members.

48.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of other Class members; she has retained Class Counsel competent to prosecute class actions and financially able to represent the Classes.

49.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products until such time that Defendant can demonstrate to the Court's satisfaction that the Products are accurately labeled.

50.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other means of adjudication for this controversy. It would be impracticable for members of the Classes to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and the members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION

## COUNT 1

### VIOLATIONS OF THE GEORGIA UNIFORM DECEPTIVE
### TRADE PRACTICES ACT, O.C.G.A. § 10-1-372(a)
#### (On behalf of the Georgia Subclass)

51.     The Plaintiff, individually and on behalf of the Georgia Subclass, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

52.     Defendant's actions as previously described constitute deceptive and unfair trade practices in violation of O.C.G.A. § 10-1-372(a).

53.     Defendant's actions, as alleged herein, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentation in violation of O.C.G.A. § 10-1-372(a).

54.     In the course of its business, Defendant engages in deceptive, unfair, and fraudulent misrepresentations as alleged herein. Defendant knowingly represents on the Products it is "on a mission to bring happiness and health to our little ones and the planet" and "[the Nurture] team creates nutritious meals and snacks[,]" despite the Products containing excessive levels of heavy metals.

55.     Consumers were certain to be deceived because Defendant knowingly failed to disclose the characteristics, ingredients, standards and/or quality of their Products.

56.     Plaintiff and the Georgia Subclass are without remedy at law and Defendant's deceptive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

57.     Plaintiff and the Georgia Subclass are therefore entitled to injunctive relief, costs, and reasonable attorney fees.

## COUNT II

### UNJUST ENRICHMENT
### (On Behalf of the National Class)

58.     Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

59.     As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of its Products by Plaintiff and the Class.

60.     Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of its misconduct, Plaintiff and the Class did not receive a product of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

61.     Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff and the Class at the expense of these parties.

62.     Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

63.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class suffered injury and seek an order directing Defendant's disgorgement and the return to Plaintiff and the Class of the amount each Class member improperly paid to Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as a Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

      B.       Ordering Defendant to pay restitution to Plaintiff and the other members of the Classes;

      C.       Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the Class, as allowable by law; and

      D.       Ordering such other and further relief as may be just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: February 18, 2021           Respectfully submitted,

                                */s/ Gary E. Mason*
                                Gary E. Mason
                                David K. Lietz*
                                **MASON LIETZ & KLINGER LLP**
                                5101 Wisconsin Avenue NW, Suite 305
                                Washington, DC 20016
                                Phone: (202) 429-2290
                                Fax: (202) 429-2294
                                gmason@masonllp.com
                                dlietz@masonllp.com

                                Jonathan Shub*
                                Kevin Laukaitis*
                                **SHUB LAW FIRM LLC**
                                134 Kings Highway E., 2nd Floor
                                Haddonfield, NJ 08033
                                Phone: (856) 772-7200
                                Fax: (856) 210-9088
                                jshub@shublawyers.com
                                klaukaitis@shublawyers.com

                                Charles E. Schaffer*
                                David C. Magagna Jr.*
                                **LEVIN, SEDRAN & BERMAN, LLP**

510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (202) 429-2290
Fax: (202) 429-2294
gklinger@masonllp.com

*Attorneys for the Plaintiff and the Putative Classes*

*\* pro hac vice to be filed*